1  Jack Silver, Esq. SB #  160575
LAW OFFICE OF JACK SILVER
2  Post Office Box 5469
Santa Rosa, CA 95402-5469
3  Tel.   (707) 528-8175
Fax.   (707) 528-8675
4  lhm28843@sbcglobal.net

5  Jerry Bernhaut, Esq. SB # 206264
Post Office Box 5469
6  Santa Rosa, CA 95402-5469
Tel.   (707) 528-8175
7  Fax.   (707) 528-8675
j2bernhaut@yahoo.com
8

9  Attorneys for Plaintiff
CALIFORNIA RIVER WATCH,
10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13  CALIFORNIA RIVER WATCH,        CASE NO. **'14 CV 2812 W    JLB**
a 501(c)(3) nonprofit, Public
14  Benefit  Corporation,          **COMPLAINT FOR INJUNCTIVE
                                   RELIEF, DECLARATORY RELIEF,
15                    Plaintiff    CIVIL PENALTIES, RESTITUTION
                                   AND REMEDIATION**
16         v.                      **(Environmental - Clean Water Act  -
                                   33 U.S.C. § 1251, *et seq*)**
17  CITY OF CARLSBAD,

18            Defendant.
    _____/

19         NOW COMES Plaintiff CALIFORNIA RIVER WATCH, a nonprofit, Public

20  Benefit Corporation, ("RIVER WATCH") by and through its attorneys, and for its

21  Complaint against Defendant CITY OF CARLSBAD ("CARLSBAD") states as follows:

22  **I.     NATURE OF THE CASE**

23  1.     This is a citizen's suit for relief brought by RIVER WATCH under the Clean

24  Water Act ("CWA"), 33 U.S.C. § 1251 *et seq*., specifically 33 U.S.C. §§ 1301, 1342 and

25  1365 (CWA §§ 301, 402 and 505), to prevent CARLSBAD from repeated and ongoing

26  violations of the CWA.  These violations are detailed in the Notice of Violations and

27  Intent to File Suit dated July 31, 2014 ("CWA NOTICE") made part of this pleading and

28  attached hereto as EXHIBIT A.

2.   CARLSBAD is a seaside resort city in northern San Diego County with a population estimated in 2012 at 109,318.  Its  geography is characterized by 3 lagoons. It occupies a 7-mile stretch of Pacific coastline. CARLSBAD's sewer service area extends from the Pacific Coast approximately 4 to 5 miles inland. The primary land use in CARLSBAD's sewer service area is residential, with local and regional commercial centers and several large industrial business parks located along the east side of El Camino Real. McClellan-Palomar Airport and several resort complexes and tourist-related facilities are centered around the Legoland amusement park and the Park Hyatt Aviara Resort. The major industrial areas, including the airport, are located in the center of the service area along Palomar Airport Road.

3.   RIVER WATCH alleges CARLSBAD is routinely violating the CWA by discharging pollutants from CARLSBAD's wastewater collection system to waters of the United States without a National Pollution Discharge Elimination System ("NPDES") permit in violation of CWA §§  301(a) and 505(f), 33 U.S.C. §§ 1311(a) and 1365(f).

4.   RIVER WATCH alleges CARLSBAD is also routinely violating the Regional Water Quality Control Board, San Diego Region, Water Quality Control Plan ("Basin Plan,"),  Environmental Protection Agency ("EPA") regulations codified in the Code of Federal Regulations, and toxics standards promulgated by the State Water Resources Control Board, as exemplified by CARLSBAD's operation of its wastewater collection system and incidents of unpermitted discharges from the wastewater collection system, as described in this Complaint and in the CWA NOTICE, to waters which are habitat for threatened or endangered species as that term is defined by the California EPA and the United States EPA, including Batiquitos Lagoon, Buena Vista Lagoon, Encinas Creek, and the Pacific Ocean – all waters of the United States.

5.   RIVER WATCH  seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for CARLSBAD's violations of the CWA as set forth in this Complaint.

//

## II.    PARTIES TO THE ACTION

6.      Plaintiff CALIFORNIA RIVER WATCH is an Internal Revenue Code § 501(c)(3) nonprofit, Public Benefit corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and offices in Los Angeles, California. RIVER WATCH's southern California mailing address is 7401 Crenshaw Boulevard, #422, Los Angeles, California 90043. The specific purpose of RIVER WATCH is to protect, enhance and help restore surface and ground waters of California including rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna; and, to educate the public concerning environmental issues associated with these environs.

7.      Members of RIVER WATCH reside in southern California where CARLSBAD's wastewater collection system, which is the subject of this Complaint, is located.  Said members have interests in the waters and watersheds which are or may be adversely affected by CARLSBAD's discharges and violations as alleged herein. Said members use the effected waters and watershed areas for domestic water, recreation, sports, fishing, swimming, hiking, photography, nature walks and/or the like.  Furthermore, the relief sought will redress the injury in fact, likelihood of future injury and interference with the interests of said members.

8.      RIVER WATCH is informed and believes, and on such information and belief alleges, that CARLSBAD is now, and at all times relevant to this Complaint was, a municipality formed under the laws of the State of California, with  administrative offices  located at 1200 Carlsbad Village Drive, Carlsbad California.

## III.    JURISDICTIONAL ALLEGATIONS

9.      Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public participation in the enforcement of the CWA.  33 U.S.C. § 1251(e) provides, in pertinent part:

//

//

COMPLAINT                                      3

1
2
3

"Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States. "

4   10.   Subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the

5   CWA, 33 U.S.C. § 1365(a)(1), which states in part,

6
7
8
9

"any citizen may commence a civil action on his own behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." For purposes of Section 505, "the term 'citizen' means a person or persons having an interest which is or may be adversely affected."

10   11.   For purposes of CWA § 505, "the term 'citizen' means a person or persons having

11   an interest which is or may be adversely affected." (33 U.S.C. § 1365(g)).

12   12.   All illegal discharges and activities complained of in this Complaint and in the

13   CWA NOTICE occur in Batiquitos Lagoon, Buena Vista Lagoon, Encinas Creek, and

14   the Pacific Ocean,  all waters of the United States.

15   13.   Members and supporters of RIVER WATCH reside in the vicinity of, enjoin

16   visiting the area, derive livelihoods from, own property near, and/or recreate on, in or

17   near and/or otherwise use, enjoy and benefit from the waterways and associated natural

18   resources into which CARLSBAD discharges pollutants, or by which CARLSBAD'

19   operations adversely affect said members' interests, in violation of  CWA § 301(a), 33

20   U.S.C.§1311(a). The  health, economic, recreational, aesthetic and environmental

21   interests of RIVER WATCH and its members may be, have been, are being, and will

22   continue to be adversely affected by CARLSBAD's unlawful violations as alleged in this

23   Complaint.  RIVER WATCH and its members  contend there exists an injury in fact to

24   them, causation of that injury by CARLSBAD's complained of conduct, and a likelihood

25   that the requested relief will redress that injury.

26   14.   Pursuant to CWA § 505(b)(1)(A), 33 U.S.C.§1365(b)(1)(A), notice of the CWA

27   violations alleged in this Complaint was given more than sixty (60) days prior to

28   commencement of this lawsuit, to: (a) CARLSBAD, (b) the United States EPA, Federal

and Regional, and (c) the State of California Water Resources Control Board.

15.     Pursuant to CWA § 505(c)(3), 33 U.S.C. § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

16.     Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the wastewater collection facilities under CARLSBAD's operation and/or control, and the sites where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

## IV.   GENERAL ALLEGATIONS

17.     CARLSBAD owns and operates a wastewater collection system consisting of approximately 252 miles of gravity sewer pipelines, 6.2 miles of force main, 16 lift stations, and 6,300 manholes. CARLSBAD provides wastewater collection services to a service area of 30.5 square miles, including the majority of the City of Carlsbad with the exception of the southeast corner, including the community of La Costa, which receives sewer service provided by the Vallecitos Water District and Leucadia Wastewater District. All wastewater flows are conveyed to the Encina Water Pollution Control Facility for treatment, and then disposal through the ocean outfall, or further treatment and delivery to the adjacent Carlsbad Water Recycling Facility for reuse.

18.     RIVER WATCH alleges CARLSBAD has a history of sewer system overflows ("SSOs") from its aging sewer lines. As self-reported by CARLSBAD in California Integrated Water Quality System's ("CIWQS") Public SSO Reports, CARLSBAD's collection system experienced 21 SSOs between July 21, 2009 and July 21, 2014, with a combined volume of 312,378 gallons – 37,550 gallons of which was admitted to have been discharged to surface waters.  For example, on October 7, 2012, a spill reported by CARLSBAD occurred at 7382 Gabbiano Lane in Carlsbad, caused by a structural failure of sewer pipe. The spill volume was reported by the Carlsbad Municipal Water District as estimated at 34,040 gallons – 32,040 of which reached surface water, impacting Batiquitos Lagoon.  On February 22, 2010, a spill occurred at 2500 Marron Road in

Carlsbad.  The spill was reported by CARLSBAD as 1,000 gallons, none of which was recovered, and the spill reached the fishing areas of Buena Vista Lagoon.

19.     Structural defects in CARLSBAD's collection system, which allow inflow and infiltration ("I/I") as well as exfiltration are one of the root causes of SSOs.  Overflows caused by blockages, I/I and defects in the line result in the discharge of raw sewage into the surrounding area outside the collection system reaching surface waters via hydrologically-connected ground waters, gutters, canals and storm drains. Surface waters affected include Batiquitos Lagoon, Buena Vista Lagoon, Encinas Creek, and the Pacific Ocean, all waters of the United States.

20.     RIVER WATCH alleges CARLSBAD has a history of non-compliance with the SSO reporting requirements mandated by the Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements ("WDR") Order No. 2006-0003-DWQ, governing the operation of sanitary sewer systems ("Statewide WDR"). The Statewide WDR requires the reporting of SSOs to the CIWQS, said reports to include an estimate of the volume of any spill, the volume recovered, and the volume which reached a surface water.  Field reports filed by CARLSBAD regularly indicate the SSO start time as the same time or within a few minutes of the time CARLSBAD was notified of the SSO.  For example, in reporting the spill which occurred at 1687 Calliadra Road in Carlsbad on April 24, 2013, CARLSBAD's field report indicates both the estimated spill start time and the time the sanitary sewer agency was notified as exactly 11:00:00. These equivalencies are highly unlikely and result in an underestimation of the duration of the spill.

21.     In addition to SSOs which discharge over land into surface waters, RIVER WATCH alleges underground  leakages ("exfiltration") caused by structural defects result in discharges to adjacent surface waters via underground hydrological connections. RIVER WATCH alleges that such discharges are continuous wherever ageing, damaged, structurally defective sewer lines in CARLSBAD's collection system are located adjacent to surface waters, including Batiquitos Lagoon, Buena Vista Lagoon, Encinas

Creek, and the Pacific Ocean, all waters of the United States. Surface waters and ground water become contaminated with enterics including E. coli and other fecal coliform, exposing people to human pathogens. CARLSBAD's chronic collection system failures pose a substantial threat to public health.

22.    RIVER WATCH alleges that both surface and underground SSOs from CARLSBAD's sewer pipelines have ongoing harmful effects on critical habitat in and around the Pacific Ocean adjacent to Carlsbad, Batiquitos Lagoon, Buena Vista Lagoon and Encinas Creek.

23.    All illegal discharges and activities complained of in this Complaint occur in the waterways named in the CWA NOTICE and in this Complaint, all of which are waters of the United States, and at the locations identified in detail in the CWA NOTICE.

24.    The Regional Water Quality Control Board, San Diego Region has determined that the watershed areas and affected waterways identified herein and in the CWA NOTICE are beneficially used for water contact recreation, non-contact water recreation, fresh water habitat, wildlife habitat, preservation of rare and endangered species, fish migration, fish spawning, industrial service supply, navigation, and sport fishing.

**V.    STATUTORY AND REGULATORY BACKGROUND**

25.    CWA § 301(a), 33 U.S.C. § 1311(a), prohibits discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including an NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations and other regulations promulgated by the EPA and the State Water Resources Control Board.

26.    CWA § 301(a) prohibits the discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342.   The wastewater collection facilities

including sewer lines, owned and operated by CARLSBAD are point sources under the CWA.

27.     The affected waterways detailed in this Complaint and in the CWA NOTICE are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

28.     The Administrator of the EPA has authorized the Regional Water Quality Control Board to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

29.     CARLSBAD is not in possession of a NPDES Permit authorizing it to discharge pollutants from its wastewater collection system and point sources within the collection system to navigable waters of the United States within the meaning of the CWA.

## VI.   VIOLATIONS

30.     RIVER WATCH alleges that CARLSBAD's violations as detailed above and in the CWA NOTICE, are violations of CWA § 301(a), 33 U.S.C. § 1311(a). The violations are established in Regional Water Quality Control Board, San Diego Region files for CARLSBAD's wastewater collection facilities, as well as in studies conducted  by CARLSBAD in compliance with orders from regulatory agencies .

31.     The enumerated violations are detailed above and in the CWA NOTICE incorporated by designating the section of the CWA violated and describing the activity constituting a violation.

32.     The location of the discharges are the discharges points as described in the CWA NOTICE and in this Complaint.

## VII.   CLAIM FOR RELIEF

### Violation of CWA  § 301(a), 33 U.S.C. § 1311(a)

### Discharges of a Pollutant From a Point Source to Waters of the United States

RIVER WATCH  realleges and incorporates by reference the allegations of Paragraphs 1 though 32 above including the CWA NOTICE as though fully set forth herein.  RIVER WATCH is informed and believes and based upon such information and

belief alleges as follows:

33.     CARLSBAD has violated and continues to violate the CWA as evidenced by the discharges of pollutants from a point source, the sewer lines making up CARLSBAD's wastewater collection system, to adjacent waters of the United States including Batiquitos Lagoon, Buena Vista Lagoon , Encinas Creek  and the Pacific Ocean, in violation of CWA § 301(a), CWA, 33 U.S.C. § 1311(a).

34.     The violations of CARLSBAD are ongoing and will continue after the filing of this Complaint.  RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by CARLSBAD  to the Regional Water Quality Control Board, San Diego Region or to RIVER WATCH  prior to the filing of this Complaint.  RIVER WATCH will amend this Complaint if necessary to address CARLSBAD's violations which may occur after the filing of this Complaint. Each of CARLSBAD's violations is a  separate violation of the CWA.

35.     RIVER WATCH alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, CARLSBAD will continue to violate the CWA with respect to the enumerated discharges and releases as alleged herein.  Further, that the relief requested in this Complaint will redress the injury to RIVER WATCH and its members, prevent future injury, and protect those members' interests which are or may be adversely affected by CARLSBAD's violations of the CWA.

**VIII.  PRAYER FOR RELIEF**

RIVER WATCH prays this Court grant the following relief:

36.     Declare CARLSBAD to have violated and to be in violation of the CWA;

37.      Issue an injunction ordering CARLSBAD to immediately operate the its wastewater collection system in compliance with the CWA;

38.     Order CARLSBAD to perform the following remedial measures:

a.      The repair or replacement, within two (2) years, of all sewer lines in CARLSBAD's wastewater collection system located within two hundred (200)

feet from surface waters, which have been inspected via closed circuit television (CCTV) within the past five (5) years and were rated as Significantly Defective under the Pipeline Assessment and Certification Program ("PACP") rating system;

b.  A Surface Water Condition Assessment, by way of CCTV, within two (2) years, of sewer lines in CARLSBAD's wastewater collection system located within two hundred (200) feet of surface waters, which have not been CCTV'd within the past five (5) years;

c.  Within two (2) years after completion of the Surface Water Condition Assessment, the repair or replacement of all sewer lines which have been found to be Significantly Defective under the PACP rating system;

d.  Beginning no more than one (1) year after completion of the Surface Water Condition Assessment, the commencement of a Full Condition Assessment by way of CCTV inspection of all sewer lines in CARLSBAD's wastewater collection system not within 200 feet of a surface water, to be completed within five (5) years. Any sewer pipe segment found to be Significantly Defective under the PACP rating system to be repaired or replaced within two (2) years of the rating determination;

e.  Modification of CARLSBAD's Backup and SSO response plan to include the method or calculations used for estimating total spill volume, spill volume that reached surface waters and estimating spill volume recovered. For Category I Spills, creation of a listing of nearby residents or business owners who have been contacted to attempt to establish the SSO start time, duration, and flow rate, if such start time, duration, and flow rate have not been otherwise reasonably ascertained, such as from a caller who provides information that brackets a given time that the SSO began. Taking of photographs of the manhole flow at the SSO site using the San Diego Method array, if applicable to the SSO; or other photographic evidence that may aid in establishing the spill volume;

//

f.  A requirement for water quality sampling and testing whenever it is estimated that fifty (50) gallons or more of untreated or partially treated wastewater from an SSO enters surface waters. Constituents tested for to include: ammonia, fecal coliform, E. coli and a CAM-17 toxic metal analysis. CARLSBAD shall collect and test samples from three (3) locations: the point of discharge, upstream of the point of discharge, and downstream of the point of discharge. If any of said constituents are found at higher levels in the point of discharge sample and the downstream sample than in the upstream sample, CARLSBAD shall determine and address the cause of the SSO that enters surface waters, and employ the following measures to prevent future overflows: (1) if the SSO is caused by a structural defect, then immediately spot repair the defect or replace the entire line; (2) if the defect is non-structural, such as a grease blockage or vandalism to a manhole cover, then perform additional maintenance or cleaning, and any other appropriate measures to fix the non-structural defect;

g.  The creation of website capacity to track information regarding SSOs; or, in the alternative, the creation of a link from CARLSBAD's website to the CIWQS SSO Public Reports. Notification to all customers and other members of the public of the existence of the web based program, including a commitment to respond to private parties submitting overflow reports.

h.  Performance of human marker sampling on creeks, rivers, and wetlands adjacent to significantly defective sewer lines to test for sewage contamination from exfiltration;

i.  Creation of a mandatory, private sewer lateral inspection and repair program triggered by any of the following events: transfer of ownership of the property if no inspection/replacement of the sewer lateral occurred within twenty (20) years prior to the transfer; the occurrence of two (2) or more SSOs caused by the private sewer lateral within two (2) years; a change of the use of the structure served (a) from residential to non-residential use, (b) to a non-residential use that will result

in a higher flow than the current non-residential use, and (c) to non-residential uses where the structure served has been vacant or unoccupied for more than three (3)years; upon replacement or repair of any part of the sewer lateral; upon issuance of a building permit with a valuation of $25,000.00 or more; upon significant repair or replacement of the main sewer line to which the lateral is attached; and,

j.   If a mandatory private sewer lateral inspection and repair program is not approved by the City Council for CARLSBAD, the implementation of an alternative program which is likely to result in a comparable number of inspections and repairs of privately owned sewer laterals, including but not limited to 1) setting up a grant and/or revolving loan program to provide partial loans for the replacement or repair of private sewer laterals, including installation of a property line cleanout, 2) negotiating group discount rates for the inspection and repair or replacement of private laterals with the contractor employed to replace the main line to which a group of laterals are attached.

39.   Order CARLSBAD to pay civil penalties of per violation/per day for its violations of the CWA;

40.   Order CARLSBAD to pay the reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by 33 U.S.C. § 1365(d), and applicable California law; and,

41.   For such other and further relief as the court deems just and proper.


DATED: November 24, 2014              _/s/ Jack Silver_____
                                      JACK SILVER
                                      Attorney for Plaintiff
                                      CALIFORNIA RIVER WATCH

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone 707-528-8175     Fax  707-528-8675
lhm28843@sbcglobal.net

*Via Certified Mail –*
*Return Receipt Requested*


July 31, 2014


Wendy Chambers, Utilities Director & General Manager
City of Carlsbad
Carlsbad Municipal Water District
5950 El Camino Real
Carlsbad, CA 92008

City Council
City of Carlsbad
1200 Carlsbad Village Drive
Carlsbad, CA 92008

**Re:    Notice of Violations and Intent to File Suit Under the Clean Water Act**

Dear Ms. Chambers and Members of the City Council:

**NOTICE**

The Clean Water Act ("CWA" or "Act") requires that 60 days prior to the  initiation of a civil action under CWA § 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of the intent to sue to the alleged violator, the Environmental Protection Agency ("EPA") and the State in which the violations occur.

California River Watch ("River Watch") hereby places the City of Carlsbad, and City of Carlsbad Municipal Water District, a subsidiary district of the City of Carlsbad, collectively hereinafter referred to as "the City," on notice that following the expiration of 60 days from the date of this Notice, River Watch intends to bring suit in the United States District Court against the City for continuing violations of an effluent standard or limitation, permit condition or requirement, a Federal or State Order or Permit issued under CWA § 402 pursuant to CWA § 301(a), and consistent with the Code of Federal Regulations, and the Regional Water Quality Control Board,

Notice of Violations Under the CWA - Page 1

San Diego Region, Water Quality Control Plan ("Basin Plan"), as exemplified by the illegal discharges of untreated sewage from the Carlsbad Municipal Water District collection system to United States Waters without a National Pollutant Discharge Elimination System ("NPDES") Permit.

The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that discharge of pollutants is prohibited with the exception of enumerated statutory exceptions, CWA § 301(a), 33 U.S.C.§ 1311(a). One such exception authorizes a polluter, which has been issued a permit pursuant to CWA § 402, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the 33 U.S.C. § 1311(a) prohibition, such that violation of a NPDES permit limitation places a polluter in violation of 33 U.S.C. § 1365, which authorizes citizen enforcement of violations of effluent standards or limitation, which are defined as including violations of 33 U.S.C. § 1311(a) and 33 U.S.C. § 1365(f)(1). Currently, the City has no NPDES permit allowing it to discharge pollutants to waters of the United States. Therefore, by virtue of its discharge of untreated sewage to United States waters without a NPDES permit, the City has been and continues to be in violation of CWA § 301(a), 33 U.S.C.§ 1311(a).

The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria. (*See* 33 U.S.C. § 1342(b)). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating discharges in the region at issue in this Notice is the Regional Water Quality Control Board, San Diego Region ("RWQCB").

**BACKGROUND**

The City of Carlsbad is a seaside resort in northern San Diego County with a population estimated in 2012 at 109,318. Its geography is characterized by 3 lagoons. It occupies a 7-mile stretch of Pacific coastline. The City's sewer service area is comprised of 4 major drainage basins which extend from approximately the eastern service area boundary and drain west to the coast.

The primary land use in the City's sewer service area is residential, with local and regional commercial centers and several large industrial business parks located along the east side of El Camino Real. McClellan-Palomar Airport and several resort

complexes and tourist related facilities are centered around the Legoland amusement park and the Park Hyatt Aviara Resort. The major industrial areas, including the airport, are located in the center of the service area along Palomar Airport Road.

The City's collection system provides wastewater collection services to 30.5 square miles through 252 miles of gravity sewer pipelines, 16 lift stations, and approximately 6,300 manholes. The City owns and maintains approximately 6.2 miles of force main. The material for the gravity pipelines is vitrified clay pipe, reinforced concrete pipe with a poly vinyl chloride liner (T-Lock liner) or Hobas pipe. The service area for the City includes the majority of Carlsbad with the exception of the southeast corner. Wastewater collection in the southeastern area, which includes the community of La Costa, is provided by the Vallecitos Water District and Leucadia Wastewater District. All wastewater flows are conveyed to the Encina Water Pollution Control Facility (EWPCF) located in Carlsbad, for treatment, and then disposal through the ocean outfall, or further treatment and delivery to the adjacent Carlsbad Water Recycling Facility for reuse.

The City's sewer service area extends from the Pacific Coast approximately 4 to 5 miles inland. Sewer flows are conveyed in 6 interceptors to the EWPCF, which is located along the coast. The cities of Vista, Carlsbad, Encinitas, and the Leucadia Wastewater District have capacity ownership rights in the interceptor pipelines.

The City has a history of sewer system overflows (SSOs) from its aging sewer lines. Structural defects in the collection system, which allow inflow and infiltration (I/I) of rainwater and groundwater into the sewer lines, result in a buildup of pressure, which causes SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals and storm drains which are connected to adjacent surface waters such as Batiquitos Lagoon, Buena Vista Lagoon, Encinas Creek, and the Pacific Ocean, all waters of the United States.

As recorded in California Integrated Water Quality System's ("CIWQS") Public SSO Reports, the City's collection system experienced 21 SSOs between July 21, 2009 and July 21, 2014, with a combined volume of 312,378 gallons – 37,550 gallons of which was discharged to surface waters. For example, on October 7, 2012, a spill occurred at 7382 Gabbiano Lane in Carlsbad, caused by a structural failure of sewer pipe. The spill volume was reported by the Carlsbad Municipal Water District as estimated at 34,040 gallons – 32,040 of which reached surface water, impacting Batiquitos Lagoon. On February 22, 2010, a spill occurred at 2500 Marron Road in Carlsbad. The spill was reported as 1,000 gallons, none of which was recovered, and the spill reached the fishing areas of Buena Vista Lagoon.

The City has a history of non-compliance with the SSO reporting requirements mandated by the Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements ("WDR") Order No. 2006-0003-DWQ, governing the operation of sanitary sewer systems (Statewide WDR). The Statewide WDR requires the reports of SSOs to the CIWQS.  The SSO reporting system shall include an estimate of the volume of any spill, the volume recovered, and the volume which reached a surface water.  The City's field reports regularly indicate the SSO start time as the same time or within a few minutes of the time the City was notified of the SSO. For example, in reporting the spill which occurred at 1687 Calliadra Road in Carlsbad on April 24, 2013, the City's field report indicates both the estimated spill start time and the time the sanitary sewer agency was notified as exactly 11:00:00. These equivalencies are highly unlikely and result in an underestimation of the duration of the spill.

The City's common practice of underestimating the duration of the spill leads to underestimating the volume of the spill.  The City's SSO reports generally do not indicate what method was used to estimate the total volume of the spill, which also calls into question the estimates of volume recovered and volume reaching a surface water. In the report referenced above the entry for item 44- "Explanation of volume estimation method used" is stated as "null". River Watch contends there is a high degree of likelihood that the City regularly underestimates the volume of SSOs as well as the volume which reaching a surface water.

In addition to surface overflows which discharge overland into surface waters, underground leakages (exfiltration) caused by pipeline cracks and other structural defects result in discharges to adjacent surface waters via underground hydrological connections. Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other systems have verified the contamination of the adjacent water with untreated sewage[1]. River Watch alleges that such discharges are continuous wherever aging, damaged, structurally defective sewer lines in the City's collection system are located adjacent to surface waters. Surface waters and groundwater become contaminated with fecal coliform, exposing people to human pathogens. The chronic defects in the City's collection system pose a substantial threat to public health.

Numerous critical habitat areas are found within areas of these SSOs. Neighboring waterways to Carlsbad include ecological reserves, coastal wetlands, and marine conservation areas. There is no record of the City performing any analysis of the

---

[1]

See the Report of Human Marker Study issued in July of 2008 and conducted by Dr. Michael L. Johnson, U.C. Davis water quality expert, performed for the City of Ukiah, finding the presence of human derived bacteria in two creeks adjacent to defective sewer lines.

impacts of SSOs on critical habitat of protected species under the ESA, nor any evaluation of the measures needed to restore water bodies designated as critical habitat from the impacts of SSOs.

Any point source discharge of sewage effluent to waters of the United States must comply with technology based, secondary treatment standards at a minimum, and any more stringent requirements necessary to meet applicable water quality standards and other requirements. Hence, the unpermitted discharge of wastewater from a sanitary sewer system to waters of the United States is illegal under the CWA. In addition, the Basin Plan adopted by the RWQCB contains discharge prohibitions which apply to the discharge of untreated or partially treated wastewater.

Discharges by the City as described herein also constitute a nuisance. These discharges are: injurious to health; indecent or offensive to the senses; or, an obstruction to the free use of property; and, occur during or as a result of the transportation, disposal or treatment of wastes.

The City's ongoing violations – discharging pollutants to waters of the United States without a NPDES Permit – pose an immediate threat to public health and the environment, both from surface water impacts of overflows and underground leakage of untreated sewage, which impact both surface and groundwater.  Furthermore, the illegal discharge of untreated wastes from the City's collection system is a significant contribution to the degradation of the Pacific Ocean and its tributaries and nearby waters such as Batiquitos Lagoon, Agua Hedionda Lagoon, Calavera Lake, and Buena Vista Lagoon, with serious adverse effects on the many beneficial uses of these waters. River Watch members residing in the area have a vital interest in bringing the City's operation of its collection system into compliance with the CWA.

**NOTICE REQUIREMENTS**

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

**1.     The specified standard, limitation, or order alleged to have been violated.**

River Watch has identified discharges of raw sewage from the City's collection system to surface waters in violation of the prohibition of the CWA with regard to discharging a pollutant from a point source to waters of the United States without a NPDES permit, CWA § 301(a), 33 U.S.C. § 1311(a) and 33 U.S.C. § 1365(f).

2.    **The activity alleged to constitute a violation.**

River Watch has set forth narratives below describing the discharges of raw sewage to surface waters as the activities leading to violations, and describing with particularity specific incidents referenced in the California State Water Resources Control Board's CIWQS SSO Public Reports and other public documents in the City's possession or otherwise available to the City, and incorporates by reference records cited from which descriptions of specific incidents were obtained.

3.    **The person or persons responsible for the alleged violation.**

The entities responsible for the violations alleged in this Notice are hereby places the City of Carlsbad, and City of Carlsbad Municipal Water District, a subsidiary district of the City of Carlsbad, collectively hereinafter referred to as "the City," as well as employees of the City responsible for compliance with the CWA and with any applicable state and federal regulations and permits.

4.    **The location of the alleged violation.**

The location or locations of the various violations are identified in records created and/or maintained by or for the City which relate to the City's sewage collection system as further described in this Notice.

5.    **The date or dates of violation or a reasonable range of dates during which the alleged activity occurred.**

River Watch has examined records of the SWRCB and the RWQCB relating to the City's collection system for the period from July 21, 2009 to July 21, 2014. The range of dates covered by this Notice is July 21, 2009 to July 21, 2014. River Watch will from time to time update this Notice to include violations which occur after the range of dates currently covered. Some violations are continuous, and therefore each day constitutes a violation.

6.    **The full name, address, and telephone number of the person giving notice.**

The entity giving notice is California River Watch, referred to throughout this notice as "River Watch". River Watch is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the waters of California including, but not limited to, its rivers, creeks, streams, tributaries, wetlands, vernal pools, and groundwater. River Watch's southern California mailing address is 3655 Westwood Blvd., #17, Los Angeles, CA 90034. River Watch may be contacted via email: US@ncriverwatch.org,

or through its attorneys.  River Watch has retained legal counsel with respect to the issues raised in this Notice. All communications should be addressed to:

>Jack Silver, Esquire
>Law Offices of Jack Silver
>Jerry Bernhaut, Esquire
>P.O. Box 5469
>Santa Rosa, CA 95402- 5469
>Tel. 707-528-8175
>Fax. 707-528-8675
>Email: lhm28843@sbcglobal.net

## VIOLATIONS

River Watch contends that for the period from July 21, 2009 to July 21, 2014, the City has violated the CWA, the Basin Plan and the Code of Federal Regulations by discharging pollutants from its collection system to waters of the United States without a NPDES permit.  Said violations are evidenced in the City's Self Monitoring Reports, testing data compiled in compliance with orders of the SWRCB, and other documentation filed with the SWRCB or in the City's possession,  and evidenced by the  CIWQS SSO Reporting Program Database Records.  Furthermore, River Watch contends these violations are continuing.

| Violations | Description |
|---|---|
| 1825 | Collection system overflows caused by underground exfiltration. – This is an event in which untreated sewage is discharged from the collection system prior to reaching the wastewater treatment plant. Underground discharges are alleged to have been continuous throughout the 5-year period from July 21, 2009 to July 21, 2014. Evidence to support the allegation of underground discharge of raw sewage exists in the City's own mass balance data regarding the number of connections in the service area, estimates of average daily volume of wastewater per connection, influent flow volumes to the EWPCF reported in the City's records, and video inspection of the collection system. |
| 25 | SSOs – as evidenced in the SWRCB's CIWQS Interactive Public SSO Reports, including the reports discussed above. Also, unrecorded surface overflows witnessed by local residents and overflows incorrectly reported as not reaching a surface water. |

63          Failure to report SSOs – It is estimated by the EPA and private studies that for every SSO reported, there are at least 3 that go unreported. In some cases the overflows occur during storm events or due to stoppages and there is no incident report made due to lack of any observation of the event. In other cases SSO events are reported, but by the time personnel arrive at the site, the overflows have ceased and no follow-up is done. In some cases the incident is reported and observed by staff, but a formal report is not made to the State, in violation of the Statewide WDR.

**REMEDIAL MEASURES REQUESTED**

**1.    DEFINITIONS**

A.    Condition Assessment: A report that comprises inspection, rating, and evaluation of the existing condition of a sewer collection system. Inspection is based upon closed circuit television ("CCTV") inspections for gravity mains; manhole inspections for structural defects; and inspections of pipe connections at the manhole. After CCTV inspection occurs, pipe conditions are assigned a grade based on the Pipeline Assessment and Certification Program ("PACP") rating system, developed by the National Association of Sewer Service Companies. The PACP is a nationally recognized sewer pipeline condition rating system for CCTV inspections.

B.    Full Condition Assessment: A Condition Assessment of all sewer lines in the sewer collection system with the exception of sewer lines located within 200 feet of surface waters.

C.    Surface Water Condition Assessment: A Condition Assessment of sewer lines in the sewer collection system located within 200 feet of surface waters, including gutters, canals and storm drains which discharge to surface waters.

D.    Significantly Defective: A sewer pipe is considered to be Significantly Defective if its condition receives a grade of 4 or 5 based on the PACP rating system. The PACP assigns grades based on the significance of the defect, extent of damage, percentage of flow capacity restriction, and/or the amount of pipe wall loss due to deterioration. Grades are assigned as follows:
5 – Most significant defect
4 – Significant defect
3 – Moderate defect
2 – Minor to moderate defect
1 – Minor defect

2.      **REMEDIAL MEASURES**

River Watch believes the following remedial measures are necessary to bring the City into compliance with the CWA and the Basin Plan, and reflect the biological impacts of the City's ongoing noncompliance with the CWA:

A.      **Sewage Collection System Investigation and Repair**

The repair or replacement, within two (2) years, of all sewer lines in the City's sewage collection system located within 200 feet of surface waters, including gutters, canals and storm drains which discharge to surface waters, which have been CCTV'd within the past 10 years and were rated as Significantly Defective or given a comparable assessment.

Within 2 years, the completion of a Surface Water Condition Assessment of sewer lines which have not been CCTV'd during the past 10 years.

Within 2 years after completion of the Surface Water Condition Assessment above, the City will:

•       Repair or replace all sewer lines which have been found to be Significantly Defective;

•       Repair or replace sewer pipe segments containing defects with a rating of 3 based on the PACP rating system, if such defect resulted in a SSO, or, if in the City's discretion, such defects are in close proximity to Significantly Defective segments that are in the process of being repaired or replaced;

•       Sewer pipe segments that contain defects with a rating of 3 that are not repaired or replaced within 5 years after completion of the Surface Water Condition Assessment shall be re-CCTV'd every 5 years to ascertain the condition of the sewer line segment. If the City determines that the grade -3 sewer pipe segment has deteriorated and needs to be repaired or replaced, the City shall complete such repair or replacement within 2 years after the last CCTV cycle;

•       Beginning no more than one 1 year after completion of the Surface Water Condition Assessment, the City shall commence a Full Condition Assessment to be completed within 7 years. Any sewer pipe segment receiving a rating of 4 or 5 based on the PACP rating system shall be repaired or replaced within 3 years of the rating determination;

- Provision in the City's Capital Improvements Plan to implement a program of Condition Assessment of all sewer lines at least every 5 years. Said program to begin 1 year following the Full Condition Assessment described above.

**B.    SSO Reporting and Response**

Modification of the City's Backup and SSO Response Plan to include in its reports submitted to the CIWIQS State Reporting System the following items:

- The method or calculations used for estimating total spill volume, spill volume that reached surface waters and spill volume recovered.

- For Category I Spills, a listing of nearby residences or business owners who have been contacted to attempt to establish the SSO start time, duration, and flow rate, if such start time, duration, and flow rate have not been otherwise reasonably ascertained, such as from a caller who provides information that brackets a given time that the SSO began.

- Taking of photographs of the manhole flow at the SSO site using the San Diego Method array, if applicable to the SSO, or other photographic evidence that may aid in establishing the spill volume.

- Water quality sampling and testing to be required whenever it is estimated that 50 gallons or more of untreated or partially treated waste water enters surface waters. Constituents tested for to include: Ammonia, Fecal Coliform, E. coli and a CAM-17 toxic metal analysis. The City shall collect and test samples from 3 locations: the point of discharge, upstream of the point of discharge, and downstream of the point of discharge. If any of said constituents are found at higher levels in the point of discharge sample and the downstream sample than in the upstream sample, the City will determine and address the cause of the SSO that enters surface waters, and employ the following measures to prevent future overflows: (a) if the SSO is caused by a structural defect, then immediately spot repair the defect or replace the entire line; (b) if the defect is non-structural, such as a grease blockage or vandalism to a manhole cover, then perform additional maintenance or cleaning, and any other appropriate measures to fix the nonstructural defect.

- Creation of website capacity to track information regarding SSOs; or in the alternative, the creation of a link from the City's website to the CIWQS SSO Public Reports. Notification to be given by the City to all customers and other members of the public of the existence of the web based program, including a commitment to respond to private parties submitting overflow reports.

- Performance of human marker sampling on creeks, rivers, wetlands and areas adjacent to sewer lines including Batiquitos Lagoon, Buena Vista Lagoon and Encinas Creek to test for sewage contamination from exfiltration.

**C.    Lateral Inspection/Repair Program**

Creation of a mandatory, private sewer lateral inspection and repair program triggered by any of the following events:

- Transfer of ownership of the property if no inspection/replacement of the sewer lateral occurred within 10 years prior to the transfer;

- The occurrence of 2 or more SSOs caused by the private sewer lateral within 2 years;

- A change of the use of the structure served (a) from residential to non-residential use, (b) to a non-residential use that will result in a higher flow than the current non-residential use, and (c) to non-residential uses where the structure served has been vacant or unoccupied for more than 3 years;

- Upon replacement or repair of any part of the sewer lateral;

- Upon issuance of a building permit with a valuation of $25,000.00 or more;

- Upon significant repair or replacement of the main sewer line to which the lateral is attached.

**CONCLUSION**

The violations as set forth in this Notice effect the health and enjoyment of members of River Watch who reside and recreate in the community of Carlsbad. Members of River Watch use the affected watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, surfing, tide pool exploring, picnicking, wedding ceremonies, hiking, photography, painting, nature walks and the like. The members' health, use and enjoyment of these natural resources are specifically impaired by the City's alleged violations of the CWA as set forth herein.

River Watch believes this Notice sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter River Watch intends to file a citizen's suit under CWA § 505 (a) against the City of for the violations identified in this Notice.

Notice of Violations Under the CWA - Page 11

During the 60-day notice period River Watch is willing to discuss effective remedies for the violations referenced in this Notice. If the City wishes to pursue such discussions in the absence of litigation, it is encouraged to initiate such discussions immediately so that the parties might be on track to resolving the issues before the end of the Notice period. River Watch will not delay the filing of a lawsuit if discussions are continuing when the 60-day notice period ends.

Very truly yours,

Jerry Bernhaut

JB:lhm

cc:    Administrator
        U.S. Environmental Protection Agency
        Ariel Rios Building
        1200 Pennsylvania Avenue, NW
        Washington, DC 20460

        Regional Administrator
        U.S. Environmental Protection Agency, Region 9
        75 Hawthorne Street
        San Francisco, CA 94105

        Executive Director
        State Water Resources Control Board
        P.O. Box 100
        Sacramento, CA 95812 - 0100

        Celia A. Brewer, City Attorney
        City of Carlsbad
        1200 Carlsbad Village Drive
        Carlsbad, CA 92008